So we'll hear Hamilton versus Westchester County. Ms. Livshitz, you can go. Thank you. May it please the court, my name is Tamara Livshitz and I will be representing Plaintiff Devante Hamilton today along with my co-counsel Samuel Weiss of the organization Rights Behind Bars. I've reserved three minutes for rebuttal. All right. While in the custody of Westchester County Jail, Mr. Hamilton dislocated his knee and tore his meniscus. Thereafter, due to the lack of accommodations at the prison, Mr. Hamilton faced excruciating pain and daily humiliation as he tried to shower, as he tried to see his family, navigate the prison, and engage in the limited outdoor recreation available to him. For example, Mr. Hamilton's complaint explains how he had to rely on his crutches in the shower, making washing himself impracticable, all because the shower had no railings, no bench, no mats, and no support whatsoever for someone who could not stand on their own two feet. To even get into and out of the shower, Plaintiff had to scale a 2.5 foot step all while balancing his crutches on a wet and slippery floor. Plaintiff was ignored when he the plaintiff more generally. In response to one grievance, Plaintiff was told that the jail was sick of crybabies he was sworn at, and that also because he was in jail, he should get over his grievances. What does the complaint say about requesting accommodations? Did he make a request? If not, what is the significance of that? He did make a request, Judge Chin. Specifically, if you look at the record at page A49, it specifically says that through Plaintiff's grievances, the jail learned about the two and a half upward and downward step in the shower, the lack of benches or shower rails. And he also notes on, this is a paragraph 49 of the complaint, he also notes that after a family visit where he experienced excruciating pain as a result of having to stand on one foot in the context of a strip frisk, he also filed a grievance and then he had two other grievances filed as well. But Your Honor, the second part of your question was, well, would it have mattered? In this circuit, at least in the Title III context, in a case, actually, in an opinion written by Judge Calabresi in Brady versus Walmart stores, this court held that when a injury is obvious, then, and there's a known injury that is known to the relevant covered entity, the plaintiff doesn't have to make an express request for disability. Here, it's just very clear that Mr. Hamilton's injuries were obvious. The jail gave him crutches. And more than that, they tried to push him up the stairs at one point. But how, I mean, in other words, the jail gave him crutches. Maybe the jail thought that was sufficient. I mean, how would they know that they had to do something about the two and a half foot step or put in a rail? I mean, if he never asked for a rail, would they just go ahead and do that on their own? Sure, Judge Chin. So, in fact, taking the complaint in the light most favorable to the plaintiff, who is, of course, representing himself pro se below, he specifically alleges on page A49 of the record that through his grievances, he did flag the lack of benches or shower rails to assist him. Also, Your Honor, I think part of your question goes to the reasonableness of the appeal. The defendants have not argued that the accommodations they provided were reasonable, in fact. So they have not challenged the fact that a bench or a rail or even a mat in the shower would have been a reasonable accommodation. Let me ask. I understood the concern on appeal to be that the claims were dismissed against the county because of the temporality of the disability. And the argument is that that's wrong after the ADEAA and the regulations, correct? That's correct, Your Honor. All right. With respect to whether or not the claims, the pleading, state a claim, what did the district court do with respect to that? Was it addressed? Sorry, Your Honor, are you asking whether or not? Well, you've been arguing to us that he has stated a claim. Correct. Did the district court rule against you on that? Yes, the district court ruled against the plaintiff on the ADEAA claim, but its sole ground for decision was the temporariness of the... Right. So if we were to find that that was error, why wouldn't the appropriate action be to remand it to the district court for it to decide whether or not the pleadings were satisfactory? The district court has an ability we don't have, which is to allow the plaintiff to amend if there are any defects or anything that he says he can plead that he didn't do. Right? Sure, Your Honor. However... And that is, would be especially so because am I not correct that he was pro se originally? And so with counsel, he might be able to amend to deal with such other things. So should we deal with any number of things other than the question of temporality? Your Honor, Your Honors, this court should deal with beyond just the issue of temporality because the district courts below have struggled, frankly, to apply the amended ADEAA, including weighing all of the relevant factors, applying the rule of construction that requires that a disability be construed broadly. So even if this court were going to suggest that something, that temporality was a factor at all, it would aid the district courts of this circuit if this addressing how to navigate the definition of disability and specifically to articulate, of course, that all that matters is whether the disability poses a substantial limitation on a major life activity. I mean, what if there's a substantial limitation for one day? That would go... I'm sorry, Your Honor. So would that matter if it was only, it was really temporary, or one day, he couldn't walk for one day? Yes, Your Honor, that could still be a disability under the amended ADEAA if it substantially limited a major life activity. However, to the extent that the question of temporariness matters, or the one day, for example, that goes to the reasonableness of the accommodation. And so, for example, if someone is unable to walk for a day, a reasonable accommodation might look very different than if they're unable to walk for a period of weeks or a longer amount of time. And of course, that's what Congress intended in the amending the ADA. Congress specifically said that the question of disability should not demand extensive analysis. Let me ask you, at the time your client filed, he had been disabled for 19 days. And your argument to us is that's not when it ended. How long, when this all plays out, how long was he disabled? So, Your Honor, you know, we can only introduce what's in the record. And so I understand that you can't rely on it and we can't rely on it. But just out of curiosity, how long was he disabled? I can't speak to the duration of his specific disability. Why not? Isn't it important to you and to your client? I mean, are we talking about somebody who was disabled for six months, a year, or was it for a month? Because again, as we look, you want us to rule that he has satisfactorily pleaded that he, a failure to accommodate. But you've just acknowledged that the length of the disability could affect what's a reasonable accommodation. But the defendants haven't challenged that the accommodations were not reasonable. I understand that. That's why I asked you why we shouldn't send it back to the district court. But thank you. Thank you. Well, I guess if I might just respond, Your Honor, to the concern that I just want to just establish that our position and of course, our client's position is that it doesn't matter, even if it did last only 19 days, assuming that's the case, even though, you know, taking all of the facts in the light, most reasonable. If I may, your position is that the district court decided on the basis of temporality, without worrying whether it was 19 days, 40 days, or another, so long as it was just temporary. And that was error. Then the question of how much gives rise to an actual violation in this case is something that is highly fact bound, and which is rather difficult for us to speak to. Well, Your Honor, I take your point. But I think according to the amended ADA, the only standard that's relevant is not the duration of the impairment, but whether the impairment while active substantially limited a major life activity. So even if it were remanded to the district court to evaluate whether the plaintiff had a disability, this court should instruct the district court that duration does not matter for the purposes of determining disability. If it matters at all, it goes to the reasonableness. And we can see that through lots of different textual sources in the statute, including the fact that when Congress did think transientness or duration did matter, it said so. And it did so in the context of a regarded as disability, as opposed to an actual disability, which is what, of course, we're dealing with here. And in respect to a regarded as... You know, we understand your legal point, but we're interested in, for example, did he have surgery? I mean, if you know whether how long did this go on, and it could be relevant to whether we, even though it's not technically in the record, it's the kind of thing that realistically could have an impact on whether we send it back, how we send it back, that kind of other side. Mr. Aiden, are you going first? Yes, Your Honor. May it please the court, Justin Aiden for the County of Westchester. The question of temporality is still relevant to whether or not the disability, whether or not an injury actually constitutes a disability under... It's a factor, but it's not preclusive. And the district court seemed to think it was preclusive. No. The district court relied heavily on it. And I think that... Solely on it. Isn't that more accurate? It may be in the work that it is the ultimate determining factor that the district court relied upon. So don't we have an error? But isn't that error? Not necessarily. As if you look at the case law, including, for example, the Francis decision from... But it's a 12B6 motion. It is alleged that it's a dislocated knee and a torn meniscus on its face. Aren't we supposed to draw the inference in his favor? I mean, it sounds like something that's going to last more than the 19 days. Well, even if you draw an inference that it's going to last for a slightly longer period of time, you can't necessarily draw an inference that it's going to last for how long. This is a pro se in 12B6. And the court seems to say, because he says that he pleads something that is temporary, that is enough to lose. All of the facts that could come out and show one way or another are not there. And we're at 12B6. So isn't that just the answer? And then whatever happens after, there are any number of things, possible time, possible amendments. But why get us beyond what is a fairly obvious situation at 12B6? Well, your honor, the threshold question in the pleading is whether or not he has pledged something that does constitute a disability. And when you look at, for example, in the Francis case, you had somebody. Look, Francis was not only time, but an obviously minor impairment. I don't think we can say as a matter of law that this is minor. I mean, I understand it was not going to be lifelong, but he has pleaded that he couldn't have access to showers without paying. I understand that there might be a different type of argument with respect to how much recreation you have to provide to someone who's temporarily disabled. I understand with respect to the visitation that you might have an argument that there was no grievance. He never asked for a chair, for instance. But at the pleading stage, don't we have enough here viewed in the light most favorable to the we must do to think that he has a plausible claim? That's all we have to find here. Right. All the court has to find is there was a plausible claim. However, I think that it still has to look at whether or not the facts as they are pled and the inferences that can be drawn really do rise to the level of what is intended to be a disability. And I would note that. How long do you think someone has to be able to endure pain while taking a shower before they've got a claim? I think that the general case law that I've seen is that it's going to be in the five, six, seven month range. Oh, so you don't have to accommodate someone who is disabled in taking a shower with pain, even if you have notice of it and all that. You don't have to do anything until the six month point is reached. It can depend. So, for example, in the department, where do you find that in the law as it was amended? Well, in the cases, including the cases that plaintiffs rely on, every one of those cases is either further on at some re-judgment or something of that sort, which is a very different situation, very, very different situation, or is one where there are reasons to think that there wasn't that degree of pain. And if you just go back to the law and go back to what the district court did. I agree. The district court may have focused on the temporality, but this court can look at the complaint and determine if there is another basis. Yes, we can affirm on any ground, but I don't know that there is any of that ground when we're talking 12B6. I would submit, Your Honor, that if you have a series of cases that say somebody who's had knee surgery and who's had knee injuries and surgeries that have incapacitated them for several months have not met their threshold of showing that they're injured under the ADA, to require us to go through discovery simply to come to the same conclusion six months or a year from now ultimately becomes a waste of resources in a sense. He's alleged a dislocated knee, a torn meniscus, he's unable to walk or stand without assistive devices, has great pain taking a shower, he has great pain with a visit, and you don't think that those allegations are enough to state a plausible claim on a 12B6 motion? Not in such a short time frame, no. But your short time frame is 19 days because he filed the complaint within 19 days, but isn't it a reasonable inference that this will go on longer than 19 days? It's a reasonable inference that it will go on longer, but there's... Do you know, by the way, what happened to him? Did he wind up having surgery or how long this lasted? I know it's not in the record, but I'm curious whether you know. I am not. However, I do know that within four months he was no longer in the Westchester County Jail, and that is in the record. The only response he put in to the motion to dismiss was his change address when he moved to another facility. So we are talking at most approximately a four-month period from the date of injury. But that doesn't go to whether he was disabled in the other facility or was disabled at home. We have no information as to how long this lasted. That is true. All we know is that it is a type of injury which characteristically is likely to be temporary. And we know that the statute says that the fact that an injury is temporary is not determinative. That's all we know now. That is true. However, again, even in the interpretive guidance in the case law, the severity of the time and the severity are both factors in determining whether or not it is a qualifying injury under the ADA. The regulations say that for a perceived or regarded as disability claim, it needs to be more than six months in essence. Doesn't that imply that for an actual disability claim, it can be less than six months? It can be. But again, the guidance, for example, that the EEOC has put out in interpreting since this specifically says that impairments that last only for a short period of time are typically not covered, although they may be if they're sufficiently severe. So it is a balancing. The shorter the duration, the more severe it needs to be. And you have, for example, in the Department of Justice regulations interpreting this, you have the fact that if somebody has a mobility impairment that requires them to be in a wheelchair, that satisfies the criteria. So if it's less than that, obviously you have more, must be a longer lasting disability. And it's not in the record. So it sounds like there needs to be some discovery on how serious this injury is, how long it lasted, et cetera. Well, I would submit, Your Honor, the district court gave the plaintiff the opportunity to amend and they chose to appeal instead. This really should have been an amendment if there was more detail to support the injury claim. All right. Thank you. We'll hear from your colleague, Mr. Sanders. Good morning. May it please the court. My name is Paul Sanders and I represent Defendants Appellees Correct Care Solutions, LLC and Dr. Raul Ulloa. Plaintiff alleged against my client's 1983 claims for deliberate indifference and under Monell, but appears to have abandoned those claims on appeal. They weren't addressed in any of the briefing or oral argument today. So I don't think there's any dispute about that. So if the court has any questions, I'll be glad to take them. Otherwise, I'll rely on my brief. Thank you. Thank you. Ms. Lischitz. Well, first, could you address whether you have, in fact, abandoned the claim against the individual? Yes, Your Honor. We are not pursuing claims against the individuals. Or CCS, LLC, right? That is correct as well, Your Honor. All right. Go ahead then. Sure. So I want to start by addressing the statutory and regulatory text that I feel was ignored by the defendant. So firstly, the relevant DOJ regulations, and the DOJ regulations are the ones that are relevant to Title II of the ADA, specifically state that effective and impairment lasted or expected to fewer than six months can be substantially limited. So it's not a requirement that injury be five, six, seven months. The express regulation allows for an injury less than six months. And Your Honor, the defendant raised the interpretive guidance put out by the EEOC, which simply says that typically a short injury may not qualify unless it's sufficiently severe, but sufficiently severe doesn't imply a higher standard of severity than the standard laid out by the statute. The statute merely says that an impairment has to substantially limit a major activity. That is the standard of severity that is contemplated by the ADA. And the reason that's important is because Congress was concerned that courts were excluding cases based on disabilities and allowing covered entities not to provide reasonable accommodation by focusing too much on the whether or not someone had a disability. Instead, Congress explicitly said that it wanted to focus on whether the accommodations were reasonable, whatever was appropriate for a given disability. And so, Your Honors, I think that's very important context when considering how to apply the standard because again, the standard does not change based on the length. All that matters is whether there is a substantial limitation to a major life activity. And that's an error that I think this court should correct and should help to instruct the district courts on the proper interpretation of the statute as it's very obvious that lots of courts have struggled with this. And I would like to also address the Francis decision on which the defendant relies. That decision, as I think recognized by Your Honors, was at summary judgment. But importantly, that decision didn't engage with the text. It didn't address the rule of construction that was expressly added to the ADA by Congress in order to avoid situations where people like Plaintiff Hamilton were denied their claims under the ADA under an improper definition of disability. Thank you, Your Honors. Thank you. Thanks to all of you. The court will reserve decision.